William Niese, OSB 081087
Edward Johnson, OSB 965737
bniese@oregonlawcenter.org
ejohnson@oregonlawcenter.org
**OREGON LAW CENTER**
455 S. 4th Street, Suite 5
P.O. Box 1098
Coos Bay, OR 97420-0241
Phone: (541) 269-2616
Fax: (541) 269-1372

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KERRY CLARK** | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| **MICHAEL MAFFEI, in his personal and official capacities; RHETT DAVIS, in his official capacity; DENYCE SHORB** | 42 USC §1983<br>ORS Chapter 90<br>Vulnerable Person Abuse<br>Conversion |
| Defendants. | **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

This case involves a police assisted illegal lockout from and destruction of plaintiff's

home.  Plaintiff, a homeless veteran with disabilities, was a tenant of Defendant Shorb, renting a

dwelling from her in Powers pursuant to a written rental agreement that was to last for the rest of

his life. On or about July 9, 2016, Powers Police Officer Rhett Davis, accompanied by Defendant

Shorb, entered Plaintiff's dwelling unit unannounced and informed Plaintiff that he was

COMPLAINT - 1

trespassed from the property. Soon thereafter, Defendants Maffei, a Powers City Counsellor, who upon information and belief had entered into an agreement for an ownership interest in the property, and Shorb broke into Plaintiff's dwelling unit while he was away and stole a number of Plaintiff's possessions. A few weeks later, Defendant Maffei physically destroyed plaintiff's home, leaving nothing but a roof sitting on a pile of rubble. Plaintiff has suffered damages and been made homeless due to the actions of Defendants.

Plaintiff brings this action pursuant to 42 USC §1983 against the City of Powers, Officer Davis and Defendant Maffei for violating his Fourth and Fourteenth Amendment rights by unlawfully forcing him, while acting under color of state law, to leave his rental unit without notice or due process of law. Plaintiff also brings state law claims for abuse of a vulnerable person, unlawful entry, unlawful ouster and conversion.

## JURISDICTION AND VENUE

1.      Jurisdiction exists for the claim pursuant to 28 USC §§1331 and 1343. The court has supplemental jurisdiction over plaintiffs' state law claims under 28 USC §1367.  Venue is proper in that these claims arose in Coos County in the State of Oregon.

## PARTIES

2.      Plaintiff Kelly Clark is a resident of Oregon and, at all relevant times, lived in Powers, Oregon in Coos County. He was, at all relevant times, a tenant as defined by ORS 90.100 and a vulnerable person as defined by ORS 124.100.

3.      Defendant Rhett Davis is employed as a police officer by the City of Powers. At all relevant times, he was acting under color of state law.

4.      Defendant Michael Maffei, at all relevant times, served on the Powers City Council and upon information and belief is now the owner or the agent of the owner of the property involved

COMPLAINT - 2

in this lawsuit. Beginning in July 2016 he was a landlord as defined by ORS 90.100.

5.      Defendants Denyce Shorb was at all relevant times a landlord in Oregon as defined by ORS 90.100.

## FACTUAL ALLEGATIONS

6.      Plaintiff, Kerry Clark is a disabled veteran who has a history of homelessness.

7.      Plaintiff suffers from Post-Traumatic Stress-Syndrome and chronic depression. His disabilities leave him susceptible to force, threat, duress, coercion, persuasion or physical or emotional injury.

8.      Plaintiff Kerry Clark moved into the property located at 460 ½ Poplar in Powers, Oregon (the "property") in June, 2016. Plaintiff entered into a written rental agreement with Denyce Shorb (the "landlord"). The agreement was for Plaintiff to rent the property for $200 a month "as long as he lives."

9.      The property was a small one-bedroom house sitting behind a larger house on the same lot.

10.     The property had no running water and was full of garbage.

11.     Plaintiff spent the month of June cleaning the property of garbage and rat nests.

12.     Upon information and belief, sometime in or about June, 2016, Defendants Maffei and Shorb reached a deal whereby Defendant Maffei would buy both the large house and the rental property for $15,000.

13.     Plaintiff learned of the deal and offered to buy the house and the rental property for $20,000 that he hoped he could get through a VA loan.

14.     Defendant Shorb agreed to Plaintiff's offer.

15.     On or about July 7, 2016 Plaintiff attempted to pay rent to Defendant Shorb. Defendant

Shorb refused to accept the rent.

16.     On or about July 9, 2016 Officer Davis arrived at Plaintiff's residence unannounced with Defendant Shorb and Defendant Maffei.

17.     Officer Davis threw open the front door and entered the dwelling unit. At no time did he knock or ask permission from Plaintiff before entering.

18.     Officer Davis told Plaintiff's friends that they had to leave and told Plaintiff that he was trespassed from the property. Officer Davis also informed those present that they had a "couple of hours" to get their stuff and get out.

19.     Plaintiff showed Officer Davis his lease. Officer Davis said words to the effect of "I don't want to see it. It's no good, anyway."

20.     Plaintiff informed Officer Davis that he'd need some time to gather his belongings. Officer Davis told Plaintiff that he needed to be out in a few hours or he would be arrested for trespass. Upon information and belief, Officer Davis was acting at the behest of Defendant Maffei, a Powers City Councilman.  In giving these orders to a Powers police officer, Defendant Maffei was acting under color of state law and in concert with Defendant Davis who, at all times, was acting under color of state law.

21.     Defendant Shorb was also present and told Plaintiff that he could have some more time, but did not specify how much time.

22.     Plaintiff spent the next couple of days packing his belongings.  He had nowhere to go, but feared arrest.

23.     On or about July l4, 2016 Plaintiff took some belongings, locked his front door, and went to a friend's house.

24.     While Plaintiff was away, Defendants Shorb and Maffei broke the lock on the property,

went inside, and stole a number of Plaintiff's belongings.

25.     Plaintiff called Officer Davis when he learned of the theft. Officer Davis told Plaintiff that he would look into the matter, but if Plaintiff did not leave the property once and for all he would arrest him for trespassing.

26.     Plaintiff cleaned up some of the damage caused by the break in and then left. Now homeless, he slept outside by the Coquille River for the next couple of days.

27.     Plaintiff returned to the property to gather more of his belongings. He was confronted by Defendant Maffei. Defendant Maffei told Plaintiff that he owned the house now and that this was Plaintiff's "last time" on the property. Plaintiff informed Defendant Maffei that he had a lot of belongings and it would take a while to gather them all.  Defendant Maffei knew that Plaintiff was a tenant of the property.  Defendant Maffei knew of Plaintiff's lifetime lease to the property. As the successor in interest to the Property, Defendant Maffei became a party to the lease with Plaintiff.

28.     Plaintiff spent the next couple of days gathering more belongings and loading them in his van. He took the belongings to a friend's house and slept in his van.

29.     Plaintiff returned to the property a couple of days later. Defendant Maffei told Plaintiff that he wasn't moving out quickly enough. Plaintiff again attempted to show Defendant Maffei his rental agreement. Defendant Maffei called Plaintiff a "nigger squatter."  Plaintiff told Defendant Maffei that he had witnesses who saw the break in. Defendant Maffei told Plaintiff that his witnesses were "lying nigger motherfuckers" and left.

30.     Plaintiff stayed at the property for a couple of days and packed another load into his vehicle. He dropped off the load at a friend's house and then travelled to another friend's house to shower. He stayed at this friend's house for a couple of days.

COMPLAINT - 5

31.     When Plaintiff returned to the property the porch was torn off, the front door and front window were gone. The back wall of the bedroom had holes in it consistent with damage caused by a sledgehammer. Plaintiff loaded up his van and took another load to his friend's house and slept in his van.

32.     Plaintiff returned to the property to find the damage had increased. Walls were cut with a power saw. An antique rocking horse that Plaintiff refurbished had been stolen. Defendant Maffei told Plaintiff that Defendant Shorb's aunt had taken the rocking horse.

33.     Plaintiff confronted Defendant Shorb about the theft at her residence. Defendant Shorb shook her head, said "no, no, no" and walked into her house.

34.     Frustrated with the theft and vandalism, Plaintiff returned to the property. He hung up some blankets and slept in the living room in an attempt to protect what was left of his personal possessions from further theft by Defendants.

35.     Over the next few days, Plaintiff took loads of property to his friend's house, then return and stay at the property. The property was progressively damaged over these few days by Defendants Maffei and Shorb, as they demolished the structure. Officer Davis, on at least one occasion, drove by the vandalism and theft while it was in progress taking no action. A witness asked Defendant Maffei what he was doing. He said "we're just trying to make him (Plaintiff) uncomfortable."

36.     On at least one occasion Defendant Shorb told client that "you need to get the fuck off of this property."

37.     At some time in August, 2016 Plaintiff was loading his belongings into a van assisted by a friend. Officer Davis approached and told Plaintiff's friend that he was trespassed but would allow him to stay at the property only if he was helping Plaintiff load items for the purpose of

COMPLAINT - 6

moving out. Plaintiff's friend asked for a citation or some type of written notification that he was trespassed. Officer Davis did not provide one.

38.     At some point in August, 2016 Officer Davis came to the property while Plaintiff was there. Officer Davis told Plaintiff that he had found some of Plaintiff's possessions, but could not bring them to the property because if "you bring it back here it'll just get stolen by you know who." Plaintiff understood that Officer Davis was referring to Defendant Maffei and Defendant Shorb. Officer Davis again told Plaintiff that he was trespassed and would have to leave the property.

39.     At some point in August, Defendant Maffei and his brother Harvey Maffei approached Plaintiff. Defendant Maffei was carrying a crowbar. Harvey Maffei was carrying a gun. Plaintiff heard Harvey say "Let's just get the Hell's Angels and have them give him a visit." Defendant Maffei said "not yet." Defendant Maffei told Plaintiff he was not moving fast enough. Plaintiff told them that every time he left more of his belongings were stolen or broken. Defendant Maffei slammed the crowbar into a piece of plywood resulting in some of Plaintiff's dishes being broken.

40.     Plaintiff left the property and has stayed at or been inside the property since, fearing for his safety.

41.     Plaintiff had nowhere to go and no choice but to leave his remaining belongings behind. Upon information and belief, the property has been nearly completely demolished, and Plaintiff has not been given access or permission to return.

42.     Plaintiff was made homeless by the actions of the defendants and has either slept in the woods or at friends' houses for the past four months.

43.     Since being unlawfully locked out of his home, Plaintiff has only been able to secure

COMPLAINT - 7

sporadic, marginal and unstable housing.

44.     As a consequence of defendants' actions, plaintiff has, to date, not been able to recover his personal property that was left at the residence when he was forced to leave in August, 2016.

45.     Officer Davis' active role in the unlawful ouster of Plaintiff from his residence without notice or due process was unnecessary, unreasonable, malicious and done with reckless or deliberate disregard for plaintiff's constitutional right to due process. His actions also constitute an unlawful seizure in that he caused Plaintiff to unlawfully lose the possessory interest in his home and personal property.  Upon information and belief, Officer Davis took illegal actions at the instruction of Defendant Maffei who was acting, in part, in his official capacity as a City of Powers City Council member.  Defendants Maffei jointly participated and acted in concert, under color of state law, to deprive Plaintiff of his property and his home without due process of law.

46.     As a result of defendants' actions, Plaintiff was made homeless and suffered anxiety, fear, sleeplessness and depression.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Fourteenth Amendment to the U.S. Constitution

### and 42 U.S.C. § 1983 (against Defendants Davis and Maffei)

47.     Plaintiff incorporates by reference the allegations above as if fully set forth herein.

48.     Plaintiff, as a tenant, had a right to be evicted only consistent with proper notice and by court order as required by ORS chapters 90 and 105.

49.     Plaintiff's right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution, was violated for which he seeks redress pursuant to 42 USC §1983

against Defendants Maffei and Davis.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment to the U.S. Constitution

### and 42 U.S.C. § 1983 (against Defendants Davis and Maffei)

50.     Plaintiff incorporates by reference the allegations above as if fully set forth herein.

51.     Plaintiff's right to be secure in his persons, houses, papers and effects, against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution as it applies to the states via the Fourteenth Amendment was violated for which he seeks redress pursuant to 42 USC §1983 against Defendants Davis and Maffei.

## THIRD CLAIM FOR RELIEF

### Oregon Residential Landlord/Tenant Act (against Defendants Shorb and Maffei)

52.     Plaintiff incorporates by reference the allegations above as if fully set forth herein

53.     Defendants Shorb and Maffei rented a unit that substantially lacked a proper and functional plumbing system in violation of ORS 90.320.

54.     Defendants Shorb and Maffei rented a unit that was not clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin in violation of ORS 90.320.

## FOURTH CLAIM FOR RELIEF

### Oregon Residential Landlord/Tenant Act (against Defendants Shorb and Maffei)

55.     Plaintiff incorporates by reference the allegations above as if fully set forth herein.

56.     Plaintiff was unlawfully ousted from his dwelling unit by Defendants Shorb and Maffei in violation of ORS 90.375.

## FIFTH CLAIM FOR RELIEF

### Oregon Residential Landlord/Tenant Act (against Defendants Shorb and Maffei)

57.    Plaintiff incorporates by reference the allegations above as if fully set forth herein.

58.    Defendants Shorb and Maffei unlawfully entered Plaintiff's dwelling unit without proper notice in violation of ORS 90.322 on at least three different occasions in June, 2016 through September 2016.

## SIXTH CLAIM FOR RELIEF

### Conversion (against Defendants Shorb and Maffei)

59.    Plaintiff incorporates by reference the allegations above as if fully set forth herein.

60.    Defendants Shorb and Maffei committed conversion by stealing Plaintiff's personal property.

61.    Defendants Shorb and Maffei committed conversion by vandalizing and destroying property that Plaintiff had a possessory interest in.

## SEVENTH CLAIM FOR RELIEF

### Abuse of a Vulnerable Person (against Defendants Shorb, Maffei, and Davis)

62.    Plaintiff incorporates by reference the allegations above as if fully set forth herein.

63.    Defendants Shorb, Maffei, and Davis committed abuse by wrongfully taking or appropriating property from Plaintiff, a vulnerable person, or by permitting others to wrongfully take or appropriate property from Plaintiff in violation of ORS 124.100 et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court for the following relief:

1.  On his first claim for relief (due process), to award him compensatory, non-economic, and punitive damages from Defendants Davis, Maffei and the City of Powers in an amount to be determined at trial;

2.  On his second claim for relief (unlawful seizure), to award him compensatory, non-

economic, and punitive damages from Defendant Davis, Maffei and the City of Powers in an amount to be determined at trial;

3. On his third claim for relief (habitability violation), to award him three months' periodic rent from Defendants Shorb and Maffei;

4. On his fourth claim for relief (unlawful ouster), to award him two months' periodic rent or twice his actual damages, whichever is greater, as well as non-economic and punitive damages in an amount to be determined at trial from Defendants Shorb and Maffei;

5. On his fifth claim for relief (unlawful entry), to award him one month's periodic rent from Defendants Shorb and Maffei for each occurrence of unlawful entry;

6. On his sixth claim for relief (conversion), to award him compensatory, non-economic, and punitive damages against Defendants Shorb and Maffei in an amount to be proven at trial;

7. On his seventh claim of relief (abuse of a vulnerable person), to award him three times all economic and non-economic damages in an amount to be determined at trial.

8. To award Plaintiff's attorneys' fees and costs pursuant to 42 USC §1988, ORS 90.255, and ORS 124.100(2)(c);

9. To grant such other relief as may be just and appropriate.

Plaintiff demands a trial by jury.

DATED this 9th day of January, 2017

OREGON LAW CENTER

/s/ William B. Niese_____
William B. Niese, OSB #081087
Of Attorneys for Plaintiff