William B. Niese, OSB #081087
Edward Johnson, OSB #965737
Emily Teplin Fox, OSB #121720
bniese@oregonlawcenter.org
ejohnson@oregonlawcenter.org
efox@oregonlawcenter.org
**OREGON LAW CENTER**
455 S. 4th Street, Suite 5
PO Box 1098
Coos Bay, OR 97420
Phone: (541) 269-2616 x 203
Fax: (541) 269-1372

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KERRY CLARK,**<br><br>                    Plaintiff,<br><br>vs.<br><br>**MICHAEL MAFFEI,** in his personal and official capacities; **RHETT DAVIS**, in his official capacity; **DENYCE SHORB; HARVEY MAFFEI,**<br><br>                    Defendants. | Case No.:      6:17-cv-00033-JR<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT** |

**MEMORANDUM OF LAW**

**LR 7-1 CERTIFICATION**

The undersigned counsel certifies that counsel for Plaintiffs conferred with counsel for defendants Michael Maffei and Rhett Davis, over the phone but they were unable to resolve the evidentiary dispute in this brief.

**Page - 1 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

Table of Authorities....................................................................................................3

LR 7-1 CERTIFICATION...........................................................................................1

INTRODUCTION.........................................................................................................6

THE FACTUAL RECORD............................................................................................6

ARGUMENT.................................................................................................................7

I. State Claims..............................................................................................................7

    A. Michael Maffei was a Landlord and is liable under ORS Chapter 90..........................7

    B. Plaintiff had a Written Rental Agreement that Created a Tenancy Under Oregon Law..............................................................................................................10

    C.  Habitability Defects do not Invalidate a Tenancy and Eliminate Tenant Remedies....11

II. Federal Claims.......................................................................................................13

    A. Michael Maffei was a government official acting under color of state law.....................................................................................................................13

    B. Plaintiff Had A Protectable Property Interest and an Objective Expectation of Privacy.................................................................................15

    C. Plaintiff Lost His Home Because He Was Unlawfully Trespassed by Davis..............18

    D. Chief Davis and Michael Maffei are not entitled to Qualified Immunity....................21

CONCLUSION............................................................................................................23

# TABLE OF AUTHORITIES

## Cases

Page

*Dikeman v. Carla Properties, Ltd.*, 127 OR App 53 (OR Court of Appeals, 1983)…………......9

*Goodman v. Fernald*, 154 Ore. 654 (Supreme Court of Oregon, 1936)…………………......9

*Portland General Electric Company v. Bureau of Labor and Industries*, 317 Or 606 (Supreme Court of Oregon, 1993)…………………………………...............11

*State v. Gaines*, 346 Or 160 (Supreme Court of Oregon 2009)...................................................11

*Brentwood Academy v. Tennessee Secondary School Ass'n,* 531 U.S. 288 (U. S. Supreme Court, 2001)………………………………………………………………......................13

*Ouzts v. Maryland Nat'l Ins Co.,* 505 F.2d 547 (9th Cir. 1974)…………………………………13

*McDade v. West*, 223 F.3d 1135 (9th Cir. 2000).......................................................................15

*Abraham v. Raso*, 183 F.3d 279 (3rd Cir. 1999).......................................................................15

*Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56 (9th Cir. 1994)................................15

*Thomas v. Cohen,* 304 F.3d 563 (6th Cir. 2002).......................................................................16

*Fuentes v. Shevin*, 407 U.S. 67 (U.S Supreme Court, 1972)...................................................16, 18

*Goldberg v. Kelly,* 397 U.S. 254 (U.S. Supreme Court, 1970)...................................................16

*Woodward v. City of Tucson,* 870 F.3d 1154 (9th Cir. 2017).......................................................17

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564 (U.S. Supreme Court, 1972)..............17

*Fournier v. Cuddeford*, 573 Fed. App 641 (9th Cir. 2014).........................................................19

*In re Fournier*, 2012 U.S. Dist. LEXIS 167262 (U.S. District Court for the District of Oregon, Portland Division 2012)......................................................................................................19

*Harlow v. Fitzgerald,* 457 U.S. 800 (U.S. Supreme Court, 1982)…………….............................21

*Saucier v. Katz,* 533 U.S. 194 (U.S. Supreme Court, 1982)...…………………………....……21

Statutes

ORS 90................................................................................................7, 15, 22

ORS 90.375..........................................................................................7, 11

ORS 90.100(23)....................................................................................7, 8, 9

ORS 90.305..............................................................................................9

ORS 90.100(6)..........................................................................................9

ORS 90.100(38)......................................................................................10

ORS 90.262............................................................................................10

ORS 90.510(6)........................................................................................10

ORS 90.220(7)(b)....................................................................................10

ORS 90.320........................................................................................11, 12

ORS 90.320(1)........................................................................................11

ORS 90.365............................................................................................12

ORS 90.368............................................................................................12

ORS 90.370............................................................................................12

ORS 105.105 TO 105.168....................................................................12, 18

ORS 105.120..........................................................................................16

ORS 90.392............................................................................................16

ORS 90.394............................................................................................16

ORS 90.396............................................................................................16

ORS 90.398............................................................................................16

ORS 90.427............................................................................................16

**Page - 4 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

ORS 105.110...................................................................................................16

ORS 105.124...................................................................................................16

ORS 105.151(1)..............................................................................................16

42 USC §1983.................................................................................................20

U.S. Constitutional Amendment IV...............................................................22

U.S. Constitutional Amendment XIV.............................................................22

## INTRODUCTION

This brief is Plaintiff's response to Defendants Davis and Michael Maffei's motion for summary judgment.

It is undisputed that Michael Maffei was a "landlord" under Oregon law. The rental agreement between William Mellor and Plaintiff created a tenancy under Oregon law and the landlords cannot escape liability based upon their own failure to comply with state habitability law or the Powers City Code. A dispute of material fact exists as to whether or not Michael Maffei was "acting under color of state law." It is undisputed that Plaintiff had a constitutionally protected property interest in the continued occupancy of his home and that Chief Davis' actions were the direct cause of his constitutional injury in this case.

Defendants' motion for summary judgment should be denied in its entirety.

## THE FACTUAL RECORD

Plaintiff integrates here by reference the statement of facts in his own Motion for Partial Summary Judgment. Defendants' "Undisputed Material Facts" mischaracterize as undisputed facts which are highly converted in the record, such as the evidence in the record about Michael Maffei's involvement in the illegal trespass in this case. Those disputes will be highlighted in the body of the brief below. Further, Defendants' motion ignores or misstates key facts in the record in this case, for example: (i) no party to the rental agreement in this case contests its validity and all parties understood that they were creating a tenancy pursuant to Oregon law; (ii) there is no legitimate dispute about the fact that Chief Davis knew of Plaintiff's tenancy and rental agreement at the time of his unlawful trespass order on July 11, 2016 and; (iii) Mr. Clark

**Page - 6 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

did not reach an agreement with Ms. Shorb *to remain* in his home after Chief Davis' illegal order, rather Shorb and Plaintiff discussed how much time he had *to vacate* after the illegal order.

Separately, Plaintiff objects to and moves to strike Defendants' inclusion of irrelevant and otherwise inadmissible allegations of an illegal enterprise contained in the deposition of William Mellor.  (Warren Decl. Ex. 4 Tr. pp. 15-17, 23-24).  Not only are these unfounded allegations made by a convicted felon who is the brother of Defendant Shorb, but by his own admission they had nothing to do with the formation of the rental agreement in this case and are entirely irrelevant to any of the issues in this case.  This highly prejudicial testimony has no probative value.  This testimony is inadmissible under Federal Rules of Evidence 401, 403 and 404.

## ARGUMENT

### I. STATE CLAIMS

### A. Michael Maffei was a Landlord and is liable under ORS Chapter 90.

ORS 90.375 states in relevant part:

If a landlord unlawfully removes or excludes the tenant from the premises, seriously attempts or seriously threatens unlawfully to remove or exclude the tenant from the premises or willfully diminishes or seriously threatens unlawfully to diminish services. . . the tenant may. . . recover up to two months' periodic rent or twice the actual damages sustained by the tenant, whichever is greater.

The term "landlord" is broadly defined at ORS 90.100(23) as "the owner, lessor or sublessor of the dwelling" including "a person who is authorized by the owner, lessor or sublessor to manage the premises."

Neither Denyce Shorb nor Harvey Maffei responded to Plaintiff's motion for summary judgment against them.  Accordingly the motion should be granted as to them.  There is no

**Page - 7 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

dispute that they were "landlords under Oregon law. Michael Maffei was also a "landlord"

because he was authorized to assist both Shorb and his brother Harvey Maffei in managing the

premises. He also had authority to act for and on behalf of both Shorb and his brother Harvey.

For example, he was authorized by Shorb to deal with the police regarding the exclusion of

Angie Armstrong from the property as early as July 6, 2016. (ECF 51-1, (Shorb Depo), 42);

(ECF 51-8, (Notice of July 2016).) Michael Maffei was also authorized by Shorb to tell plaintiff

to leave the premises, something he did in Shorb's presence. (ECF 51-1, (Shorb Depo), 26:24-

27:1); ECF 51-2, (M.Maffei), Depo, 45:1-7.) Michael Maffei admitted that he and his brother,

with the express authorization of Shorb, posted the legally flawed 72 hour notice on plaintiff's

home on or around August 26, 2016. (ECF 51-2 (M.Maffei Depo), 42:7-24.) These acts are all

clearly functions of managing the property for the landlord, making Michael Maffei a landlord

under ORS 90.100(23).

Further, Michael Maffei obtained and annotated the sales agreement between Shorb and

Harvey Maffei and acted as the seller's witness, all functions that show he was acting as a

landlord as authorized by the owner. This is true because his annotations which were

incorporated into the sales agreement dealt directly with what was to happen to Plaintiff, his

home and his belongings, and were central to managing the property with regard to that landlord-

tenant relationship. (ECF 51-11 (Sales Agreement).) Throughout the dates relevant to this

dispute, Michael Maffei held himself out to plaintiff as the purchaser of the property and

repeatedly threatened him with physical force if he did not leave. (ECF 50 (Clark Dec. ¶14).)

Finally, Michael Maffei assisted his brother Harvey in the demolition of plaintiff's home and

advised him to tear it down "a piece at a time." (ECF 51-2 (M. Maffei Depo), 47:2-4); (ECF 47

(Angie Armstrong Dec.¶ 9); (ECF 51-6 (Vinson Depo), 34:13-16.)

**Page - 8 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND
NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

Defendants' arguments that Michael Maffei was not a Landlord are without merit. Defendant cites *Dikeman v. Carla Properties, Ltd.*, 127 Or App 53 (1983). *Dikeman* relies on a version of the Oregon Landlord Tenant Act (ORLTA) that has not been law in Oregon for decades. In 1983, a landlord was defined as "the owner, lessor or sublessor of the dwelling unit or the building of which it is a part, and it also means a manager of the premises who fails to disclose as required by ORS 90.305." ORS 90.100(6), Oregon Revised Statutes, 1983 Edition. In *Dikeman* the defendant was a property management company who was properly disclosed under ORS 90.305. *Dikeman,* 127 Or App 53, 57 (1983). The ORLTA has been revised in the 35 years since *Dikeman* was issued. The definition of "landlord" applicable to this case is above as found at ORS 90.100(23) and the reference to ORS 90.305 has been removed. Defendant Michael Maffei is a landlord in Oregon under the current definition and is liable for his actions under the ORLTA.

Defendants' cite to a pre-ORLTA case is equally unavailing. (ECF 52 (Defendant's Motion for Summary Judgment, 15-16).) *Goodman v. Fernald*, 154 Ore. 654 (1936) simply does not apply here. *Goodman* was decided nearly forty years before the ORLTA was passed. The ORLTA now occupies the field of landlord-tenant law in Oregon and explicitly supplants whatever common law may have existed at the time of its passage. The ORLTA states that legislative intent clearly, "[t]his chapter applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state." The ORLTA controls here and under ORS 90.100(23) someone, like Michael Maffei, who "is authorized by the owner, lessor or sublessor to manage the premises" is a landlord.

Michael Maffei is a landlord under the ORLTA. Plaintiff's position as briefed in his motion for summary judgment is that there is no material dispute of fact on this issue. That said,

**Page - 9 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

at a minimum, all of the above incidents where Shorb and Harvey Maffei authorized Michael

Maffei to act on their behalf in managing the property create a triable issue of fact.

**B.    Plaintiff had a Written Rental Agreement that Created a Tenancy Under Oregon Law**

Pursuant to ORS 90.100(38):

"Rental agreement" means all agreements, written or oral, and valid rules and regulations adopted under ORS 90.262 or 90.510(6) embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises. "Rental agreement" includes a lease. A rental agreement shall be either a week-to-week tenancy, month-to-month tenancy or fixed term tenancy.

Further, ORS 90.220(7)(b) clearly states that a rental agreement that does not create a

week-to-week or fixed term tenancy "*shall be* a month-to-month tenancy." (emphasis added).

Plaintiff's rental agreement required that rent be paid monthly and that his tenancy could be

terminated if he was 60 days or more late on paying rent. (ECF 51-7 (Lease Agreement).)

Assuming without admitting that Defendants are correct that "for as long as he shall live" clause

does not create a fixed term tenancy, it is clear that Plaintiff had a month-to-month tenancy. The

plain language of ORS 90.220(7)(b) could not be clearer on this point. The rental agreement was

valid and Plaintiff is entitled to the ORTLA's protections. The fact that Plaintiff's rental

agreement may have been a month-to-month agreement does not impact any of the issues

presented in these cross motions.

It is also relevant here that no party to the agreement is contesting its validity.  It is

undisputed that the parties intended to create a rental agreement and successfully did so.  The

parties may have attempted and failed to create a legal "life estate," but whether Plaintiff has a

term tenancy or a month-to-month tenancy is irrelevant to the relief he seeks in this case.  He

was a tenant with a written rental agreement under Oregon law.  ORS 90.220(7)(b).

**C.     Habitability Defects do not Invalidate a Tenancy and Eliminate Tenant Remedies**

The Defendants argue that Plaintiff doesn't have rights as a tenant because, among other things, the house that he rented was "uninhabitable" and "unsafe" (ECF 53 (Patterson Declaration), pp. 22). Defendants argue that, because of these habitability problems, the lease is unenforceable and therefore Plaintiff should not be afforded the protections of the ORLTA (ECF 52 (Defendant's Motion for Summary Judgment), 23). In essence, Defendants are arguing that Plaintiff has no right to the statutory protections given him because his landlords failed to fulfill their responsibilities under the ORLTA. This argument turns the central purpose of the ORLTA on its head.

Nothing in the statute, or statutory context, permits such an interpretation. In fact, defendants' argument is directly contrary to ORS 90.320, which gives tenants the right to sue over habitability violations and compel landlords to fix them.  If landlords could evade their legal responsibilities by violating ORS 90.320, tenants in Oregon would have no way to enforce their statutory right to a safe and habitable home, to say nothing of the perverse incentive such a policy would create.

In Oregon, statutes are interpreted by the court in a manner explained in *Portland General Electric Company v. Bureau of Labor and Industries*, 317 Or 606, 610-612 (1993), modified by *State v Gaines*, 346 Or 160, 171-173 (2009). The text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent. *Id.* Here, the Court need go no further than the plain language of the first sentence of ORS 90.320. "A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition."  ORS 90.320(1).  ORS 90.320 and other provisions in the ORLTA go on to explain the details of this requirement and the various remedies that *tenants have* when landlords breach

this duty. These tenant remedies include terminating the tenancy, suing for damages or injunctive relief, counterclaiming in eviction proceedings as well as doing repairs and deducting the cost from the rent. ORS 90.320; ORS 90.365; ORS 90.368; ORS 90.370; ORS 90.375.

Nothing in the plain language of the statute forbids a tenant from asserting his rights when a landlord has rented an uninhabitable unit. Similarly, nothing in the statute allows a landlord to shield him or herself from litigation under the ORLTA by renting an uninhabitable unit. On the contrary, the statute lays out in plain and unambiguous language what remedies are available to a tenant who has rented an uninhabitable unit from a landlord. Certainly nothing in the ORLTA allows landlords to engage in self-help or police-assisted dispossession of uninhabitable units without going to eviction court. Under Oregon law, a residential tenant can only be dispossessed of their home pursuant to a court order. (ORS 105.105 to 105.168).

Defendants' argument regarding the alleged violation of a local zoning ordinance is equally inapposite. (Defendant's Motion for Summary Judgment), 22). If a violation of city ordinance did occur, the City of Powers could have, theoretically, levied fines or brought an action against the owners of the property and their agents pursuant to the city code. In other words, the City could have gone after the defendants if they in fact violated the local ordinance. Had this happened, and it did not, it would only have given plaintiff additional claims against defendants for renting him a dwelling in violation of the city code. Again, it is contrary to the ORLTA and public policy to reward landlords and deprive tenants of their rights because the landlord may have violated a city ordinance.

**Page - 12 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

## II. Federal Claims

### A. Michael Maffei was a government official acting under color of state law

The Supreme Court has held that determining whether a person or entity has acted under color of state law is a "normative judgment" and "the criteria lack rigid simplicity [and] no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against" finding state action. *Brentwood Academy v. Tennessee Secondary School Ass'n,* 531 U.S. 288, 295-96 (2001). The Court in *Brentwood Academy* found that when looking at whether a private party has acted under color of state law, the court must consider a "host of facts" including whether there is "joint participation" between the private party and the state and whether the private party is entwined with government. *Id.* at 296, 311

Defendants argue that whatever Michael Maffei did in this case he did it as a private citizen and not in his capacity as a sitting city councilor for the City of Powers. The factual record is not that simple. (ECF 52 (Defendants' Motion) 24.) It is undisputed that Michael Maffei was a councilmember on the Powers City Council when all of the events relevant to this case took place. (ECF 52 (Defendants' Motion) 9.) There is, however, a disputed issue of material fact about whether Michael Maffei was acting as an individual, a city councilor or both. There is also a disputed issue of material fact about whether his role as a city councilor influenced the actions of Chief Davis. These are fact questions to be determined at trial.

Among other cases, defendants cite *Ouzts v. Maryland Nat'l Ins. Co.* to argue that private conduct is not covered under §1983. (Defendant's Motion), 24). In *Ouzts,* the actors were private bounty hunters, and therefore not state actors, *Ouzts* at 550. The critical difference here is that Michael Maffei sits on the Powers City Council, a public entity, and is clearly a state actor when

**Page - 13 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

acting in that capacity.  The fact question for trial is whether he was acting in that capacity or whether his role as a state actor influenced Chief Davis' actions.

The factual record in this case shows that Michael Maffei assisted Shorb and his brother Harvey Maffei in the illegal lockout and the destruction of the property. (ECF 50 (Clark Declaration) ¶16); (ECF 51-2 (M. Maffei Depo), 50:15-24); (ECF 47 (Armstrong Dec) ¶ 9); (ECF 51- 6, (Vinson Depo), 34:13-16.).  But, most relevant to this issue, is the evidence in the record that Michael Maffei contacted the Powers Police Department 13 times by phone in the ten days leading up to the illegal trespass of Mr. Clark.  (Ex. 10, (Verizon Phone Records).)  Further, on at least one occasion Councilman Maffei spoke to Chief Davis about excluding Mr. Clark from his home  at City Hall in Powers.  (Ex. 2, (M.Maffei Depo), 39:12-40:5.) And, the record shows that the Mayor of Powers was also enlisted to contact Chief Davis about the status of removing Mr. Clark from his home.  (Ex. 4, (Davis Depo), 27:6-15.) This creates, at a minimum, a reasonable inference that Councilman Maffei  used his position as a City Councilor to influence Chief Davis.  A finder of fact could draw a reasonable inference from this factual record that Chief Davis responded to that influence and trespassed not only Plaintiff and his guests but also Angie Armstrong.  There is no evidence in the record that Chief Davis, who issued and signed the City of Powers policy on police not getting involved in landlord-tenant matters, had ever engaged in illegal lock-outs at the behest of "regular citizens."  The trier of fact could, looking at this factual record, draw the very reasonable inference, that Michael Maffei's position as a sitting city councilor is what persuaded Chief Davis to do something that he knew was illegal.

It is common policy and routine practice for law enforcement officials to tell landlords to "get a court order" when landlords seek help from police on a trespass, because it protects the

police from lawsuits like this one.  Chief Davis, who issued and signed  the City of Powers

policy on police involvement in landlord-tenant issues, knew this. It is inferable that Chief Davis

took this risk and violated his own policy because of influence from Michael Maffei, a city

official, and that, therefore, Councilman Maffei was acting under color of state law.  The

influence that Councilman Maffei exercised on Chief Davis is what it means to act *under color*

of state law.  In particular, when Councilman Maffei approached Chief Davis *in Powers City*

*Hall* about trespassing Mr. Clark, it is hard to imagine that Chief Davis would not have been

influenced by the Councilman's government position and his official capacity.  Government

officials who use their position to violate individuals' rights for their own private purposes are

commonly found to have acted "under color" of state law.  *See, e.g., McDade v. West,* 223 F.3d

1135 (9th Cir. 2000)(Ninth Circuit held that a district attorney's office employee who accessed a

government database so that he could serve legal papers on his wife in a battered women's

shelter was acting under color of state law).  Similarly, there are many reported cases involving

the actions of off-duty police officers.  The fact that the officer may be acting for their own

personal benefit does not exclude them from being found to be engaged in state action if they use

their position as a police officer to accomplish their personal goals.  For example, flashing a

badge or carrying a service revolver has led to off-duty officers being found to be state actors.

*See, e.g., Abraham v. Raso,* 183 F.3d 279 (3rd Cir. 1999)(off duty police officer working as a

mall security guard found to be acting under color of state law because she was wearing a

uniform).

### B. Plaintiff Had A Protectable Property Interest and an Objective Expectation of Privacy

A threshold requirement of procedural due process is a constitutionally protected

property interest.  *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

**Page - 15 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

"It is well settled that possessory interests in property invoke procedural due process protections." *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002), *cert. denied,* 538 U.S. 1032 (2003) citing *Fuentes v. Shevin,* 407 U.S. 67, 87 (1972).  At its core, the due process clause requires that a person be provided with proper notice and afforded a meaningful opportunity to be heard before a state actor deprives them of a property interest.  The fundamental requisite of due process of law is the opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970).

Plaintiff lost his home when Defendant Davis ordered him to leave under threat of arrest and when Defendants Michael and Harvey Maffei threatened him with force and destroyed his home.  A person's possessory property interest in the continued occupancy of their home is central to daily life.  The fundamental due process protections in the eviction context are embodied in the Oregon Residential Landlord and Tenant Act (ORS Chapter 90).  Under Oregon law, a lawful "eviction" from a residential dwelling requires that a written notice be properly served on the tenant.  ORS 105.120.  This notice gives the tenant a period of time in which to either vacate the property or cure the lease violation.  ORS 90.392; 90.394; 90.396; 90.398; 90.427.  If the tenant remains on the premises after the expiration of the notice, the landlord must file an eviction action under Oregon's forcible entry and detainer statute.  ORS 105.110; 105.124.  If the landlord prevails and obtains a judgment of restitution of the premises from the court, the landlord must have the sheriff's office serve the tenant with a notice of restitution giving the tenant at least four days to vacate.  ORS 105.151(1)(a).  If, after the notice of restitution has expired, the tenants have not vacated, the landlord must have the sheriff enforce the judgment of restitution by returning possession of the premises to the landlord.  ORS 105.151(1)(b).  A tenant retains the exclusive right to possession of the premises until these steps

have been taken.  None of these legal prerequisites occurred in this case.  The landlords simply called Chief Davis and asked that he trespass Plaintiff from the home he was renting pursuant to a written rental agreement.  Chief Davis ordered Plaintiff to leave and never withdrew his trespass order.  When Plaintiff took too long for Defendants' liking, Harvey and Michael Maffei physically destroyed his home with the authorization from the owner Denyce Shorb.  Defendants deprived plaintiff of his due process rights by unlawfully ordering him to leave his home without prior notice and an opportunity to be heard.

Defendants rely on *Woodward v City of Tucson*, 870 F.3d 1154 (9th Cir. 2017) to argue that Plaintiff did not have his right to due process violated when Michael Maffei and Rhett Davis trespassed him from his home without a court order. (ECF 52 (Defendants Motion for Summary Judgment) 25). The facts in *Woodward* are entirely distinguishable from this case. In *Woodward* the Plaintiff was the house guest of a squatter. *Id.* at 1160. In the case at hand, Plaintiff was a tenant living in the property with full knowledge of the landlords via a signed rental agreement (ECF 51-7(Shorb Lease Agreement).)

The U.S. Supreme Court has stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiff lost his home when defendant Davis ordered him to leave. Pursuant to his written rental agreement, plaintiff had a reasonable expectation that he would be able to live in this home for the rest of his life, or at least until his tenancy was lawfully terminated and he was evicted. (ECF 51-7(Shorb Lease Agreement).) A person's possessory property interest in the

**Page - 17 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

continued occupancy of their home is fundamental to daily life. It is well-settled that possessory interests in property invoke procedural due process protections. *Fuentes v. Shevin*, 407 U.S. 67, 85 (1972).

Under Oregon law, a residential tenant can only be dispossessed of their home pursuant to a court issued eviction order. ORS 105.105 to 105.168. On July 11, 2016, Chief Davis ordered Plaintiff to leave despite being told by multiple parties present that Plaintiff was a tenant with a written rental agreement.  This unlawful trespass order deprived Plaintiff of a constitutionally protected property interest.

**C.      Plaintiff Lost His Home Because He Was Unlawfully Trespassed by Davis**

Despite Defendants' arguments to the contrary, the causation element in this case is straightforward.  Chief Davis, on-duty and acting under color of state law, unlawfully ordered Mr. Clark (and his guests) to leave his home.  That order was never rescinded by Chief Davis.  In fact, it was reiterated on multiple occasions.  Chief Davis' order directly caused the constitutional deprivations in this case.  The order set in motion the destruction of Plaintiff's home and led to his unlawful ouster and homelessness.

As an initial matter, Defendants assert in a footnote that the evidence is "undisputed" that Chief Davis was not acting at the behest of Michael Maffei. (ECF 52 (Defendant's Motion for Summary Judgment) 28.) This footnote is incorrect. As detailed above, the evidence shows that Michael Maffei was actively influencing Chief Davis to unlawfully trespass Plaintiff. Michael Maffei was actively assisting his brother Harvey in purchasing the house. Councilman Maffei contacted Chief Davis repeatedly to enlist his help in getting rid of Angie Armstrong and her guests from the "main" house and then in getting rid of Kerry Clark and his guests from the back house. These efforts included, at a minimum, 13 phone calls in the 10 days leading up to the

illegal trespass order, a contact at City Hall and the involvement of the Mayor of the City of Powers.

Regarding the causation element, Defendants cite a number of cases in an attempt to show that Officer Davis was not the cause of Plaintiff's unlawful eviction.  In particular, Defendants' argue at length about the alleged  "similarities" between Officer Davis' actions and those of Clackamas County Sheriff Deputy Cuddeford in *Fournier v. Cuddeford*, 573 Fed. App 641 (9th Cir. 2014). Defendants' comparison here is inapt and their analysis of *Fournier* is incorrect.  *Fournier* is not on point and is entirely distinguishable from the facts of this case. In *Fournier*, the Court clearly found that the officer was responding to a 911 call and arrived at  "a scene not of his making after the confrontation had already occured." *Id. at* 642. When the officers in *Fournier* arrived, the Plaintiffs had already been thrown out of the house by their landlords and were outside the house.  Critically, for the purposes of this motion, there was a dispute about who was entitled to possession and whether Plaintiffs were tenants at all.  In re Fournier, 2012 U.S. Dist. LEXIS 167262 (U.S. District Court for the District of Oregon, Portland Division 2012), *7-9. In the case at hand, Officer Davis did not arrive at a scene where the landlord had already taken possession and where there was a dispute about who was entitled to possession.  Here, Chief Davis, knowing that Plaintiff had a written rental agreement, approached plaintiff in his home and ordered him and his guests to leave under threat of arrest for trespass.  This was a scene completely of Chief Davis' own making. (ECF 48 (Declaration of Cierra St Louis), ¶ 3); (ECF 49 (Declaration of Kiefer McEldowney), ¶ 3); (ECF 50 (Clark Declaration), ¶ 8.)

The facts of this case constitute the very definition of an unlawful police-assisted trespass.  Denyce Shorb called Chief Davis and requested him to trespass Kerry Clark (ECF 51-

1 (Shorb Depo) 20). It is true that Chief Davis also trespassed Angela Armstrong who had a right to continued possession pursuant to a restraining order she had gotten against the property owner William Mellor subsequent to his arrest for assaulting her. Chief Davis refused to look at the restraining order, instead telling her "it's not worth the paper it's printed on". (ECF 47 (Armstrong Decl) ¶7); (ECF 51-3 (Armstrong Depo) 41, 6-14.). Nothing about this separate unlawful trespass weakens plaintiff's claim for the same action against him by Chief Davis. In fact, it shows the lengths that Chief Davis was willing to go to placate Councilman Michael Maffei who wanted everyone off the property so that his brother could move in and tear down the back house.

In order to state a claim under 42 USC §1983, Plaintiff must prove that Chief Davis, while acting under color of state law, deprived them of a right secured by the Constitution of the United States. *Fournier* at *16-17. Here, Officer Davis, under color of state law, threatened Plaintiff with arrest if he did not leave his home, even after being made aware that Plaintiff was lawfully there, thereby depriving him of his property rights without due process of law. (ECF 50 (Clark Decl) ¶8-9); (ECF 48 (St Louis Decl) ¶2-5); (ECF 49 (McEldowney Decl) ¶2-6.)

Plaintiff must also show that defendant's conduct was the actionable cause of the claimed injury. *Fournier* at *17. This can be accomplished by "showing that the defendant personally participated in the alleged constitutional injury or 'by setting in motion a series of acts which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" (*Id*.). The analysis in *Fournier,* when applied to the facts of this case, fully support a finding that Chief Davis caused Plaintiff's constitutional injury. The illegal order by Chief Davis set in motion the illegal actions of Denyce Shorb, Harvey Maffei, and Michael Maffei and was clearly *the* actionable cause of Plaintiff's Injury.

**Page - 20 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff would never have begun the process of moving if it weren't for Chief Davis' illegal order. The record is uncontradicted that, after a period of homelessness, Plaintiff entered into a rental agreement for what he thought would be his home for the rest of his life. (ECF 50 (Clark Decl) ¶¶ 2-5.) Officer Davis knew that Plaintiff lived at the residence, as he regularly drove past the property and saw Plaintiff working on the house. (ECF 47 (Armstrong Decl) ¶8.) Chief Davis threatened Plaintiff with arrest if he did not vacate the premises. (ECF 50 (Clark Decl) ¶8-9); (ECF 48 (St Louis Decl) ¶2-5); (ECF 49 (McEldowney Decl) ¶2-6.) While he did not immediately take Plaintiff into custody, the threat of arrest was never rescinded and Plaintiff was well aware that he faced arrest if he took too long moving out. (ECF 50 (Clark Decl) ¶¶9-14.) But for the actions of Chief Davis, Plaintiff would have continued living in and repairing his home. Due to the actions of Chief Davis and the actions of the other Defendants that Chief Davis put in motion, Plaintiff was forced out of his home and became homeless. (*Id*, ¶¶ 16-19.)

### D. Chief Davis and Michael Maffei are not entitled to Qualified Immunity

If ever there was a case where an entitlement to qualified immunity was *not* appropriate, this is it. Government "officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v Fitzgerald,* 457 U.S. 800, 818 (1982). A two-step analysis, established by the Supreme Court in *Saucier v. Katz* requires the court to determine (i) whether Chief Davis's conduct violated plaintiff's constitutional rights and (ii) whether those rights were clearly established. 533 U.S. 194, 200-01 (2001).

Here, Chief Davis not only knew that non-court ordered evictions were illegal, he *issued and signed* the City of Powers official policy on the matter. (51-9 (Powers Police Policy on

**Page - 21 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

Landlord/Tenant Disputes) Bates Stamped M/D 000030 to MD 000032.) This policy, issued by

Chief Davis on April 21, 2009, states that "Officers of the Powers Police Department shall not

lend assistance to any landlord or property manager in effecting the eviction of any tenant or

guest of a tenant, but shall refer all such matters to the Coos County Sheriff's Office for

resolution." (*Id*. at 1). More specifically, Chief Davis' order reads, "[t]enants may not be

trespassed off their property. Neither a tenant nor a tenant's guest may be removed by the police

for violation of a rental agreement or other 'house rules." The only lawful method for removal of

a tenant is for the landlord to use the civil eviction process and obtain a court order." (*Id*.) This

order by Chief Davis accurately states the well-established nature of the rights that he violated in

this case. Under a Section headed "Risks Involved" Chief Davis' order and policy reads, "a

Police Officer who threatens or executes an arrest. . . or who assists or who encourages a

landlord in excluding or removing an tenant's belongings, may risk civil liability against the

officer. . . If the Landlord and Tenant Act applies then the tenant has a right to a jury trial prior to

removal." (*Id*. at 3.)

    Officer Davis knew that Plaintiff had entered into a rental agreement with Defendant

Shorb and still threatened him with arrest if he did not acquiesce to his unlawful trespass. (ECF

50 (Clark Decl) ¶8-9); (ECF 48 (St Louis Decl) ¶2-5); (ECF 49 (McEldowney Decl) ¶2-6.)

    Plaintiff has provided undisputed evidence that he was deprived of his Fourth and

Fourteenth Amendment rights. As described above, Chief Davis caused these constitutional

deprivations. At the time of these incidents in the summer of 2016, the law on these Fourth and

Fourteenth Amendment rights was clearly established such that a law enforcement officer could

not actively participate in assisting a landlord in seizing a tenant's home and personal property

**Page - 22 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND
NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**

and in trespassing a tenant without an eviction notice, a Forcible Entry and Detainer Action under ORS Chapter 90 or a court order.

Despite not only knowing about, but actually issuing, the policy for the City of Powers, Chief Davis violated plaintiff's well-established rights by trespassing him from his home without a court order. Qualified immunity cannot apply in these circumstances.

Likewise, Councilman Maffei can not claim qualified immunity for his role in encouraging Chief Davis to violate the clearly established law as embodied in the Powers Police Policy on landlord-tenant matters.  Further, contrary to Defendant's assertions, Michael Maffei did more than just report "his concerns" to the police (ECF 52 (Defendants' Motion for Summary Judgment) 35.) Michael Maffei held himself out to plaintiff as the purchaser of the property and repeatedly threatened him with physical force if he did not leave. (ECF 50 (Clark Dec.) ¶14.) Qualified immunity cannot apply to him in these circumstances.  He also, as detailed above, used his position as a City Councilman to influence the Chief of Police.

## **CONCLUSION**

Defendants, for all of the above reasons, are not entitled to Summary Judgement on any of Plaintiff's claims.  Their motion for summary judgment should be denied in its entirety.

DATED this 9th day of March , 2018


_____ s/ William B. Niese_____
William B. Niese, OSB #081087
Of Attorneys for Plaintiff


**Page - 23 PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL MAFFEI AND NOAH RHETT DAVIS' MOTION FOR SUMMARY JUDGMENT**